## JENNIFER JAMES *v.* THE VALLEY-SHORE Y.M.C.A., INC.
### (AC 31571)

Gruendel, Beach and Sullivan, Js.

Argued September 21—officially released November 23, 2010

*William F. Gallagher*, with whom, on the brief, were *Michael L. Oh* and *Mark A. Balaban*, for the appellant (plaintiff).

*Ralph W. Johnson III*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Jennifer James, appeals from the summary judgment rendered by the trial court in favor of the defendant, The Valley-Shore Y.M.C.A.,

Inc. She claims that the court improperly concluded that no genuine issue of material fact existed as to the notice element of this premises liability action.[1] We affirm the judgment of the trial court.

The record, viewed in the light most favorable to the plaintiff; see *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009); reveals the following facts. On June 26, 2007, the plaintiff and her husband, Alan James, swam in a pool on the defendant's premises without incident. The plaintiff entered and exited the pool via a ladder with metal steps and encountered no difficulty in so doing. Neither the plaintiff nor her husband noticed any slippery conditions on the ladder at that time. When they returned to the defendant's facility the following day, the plaintiff approached the same ladder to enter the pool. As she entered the pool via the ladder, she slipped and fell, resulting in physical injury to her shoulder and knee. Her husband already had entered the pool and did not witness her fall, but came to her aid soon thereafter. With the plaintiff standing in the pool beside him, he ran his hand over a step that was underwater and felt "a slimy, slippery, algae-like build-up . . . ." Nevertheless, the plaintiff and her husband at that time did not notify the defendant or its employees of the incident or the allegedly unsafe condition that they had discovered. Rather, the plaintiff first reported her accident to the defendant seven weeks later. At that time, she stated that she had "slipped on the steps" and did not mention any slippery substance or residue thereon.

The plaintiff thereafter commenced this negligence action against the defendant grounded in premises liability. Her one count complaint alleged, inter alia, that

[1] In light of our conclusion that summary judgment was appropriate on that ground, we do not address the court's alternate basis for rendering summary judgment or the plaintiff's challenge thereto. See *Valentine* v. *LaBow*, 95 Conn. App. 436, 448 n.11, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006).

the negligence of the defendant in failing to maintain the ladder properly "caused [her] to fall on a slippery substance on [its] steps" and that "[t]he defendant knew, or had it exercised due care and proper diligence, should have known of the aforesaid conditions." On April 15, 2009, the defendant filed a motion for summary judgment, alleging that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. Specifically, the defendant averred that there was no evidence before the court that it had actual or constructive notice of the allegedly unsafe condition or that the condition caused the plaintiff's injuries. In support of the motion, the defendant submitted (1) certain deposition testimony of the plaintiff, (2) the affidavit of Heather Husted, the defendant's aquatic director at all relevant times, (3) the affidavit of Joan Camire, the defendant's executive director at the time of the incident, and (4) the affidavit of Maureen Paul, the defendant's membership director at the time of the incident, to whom the plaintiff on August 17, 2007, reported her fall.[2] In objecting to the motion, the plaintiff submitted the affidavit of her husband and certain deposition testimony of John Looney, the defendant's facilities director. In its September 25, 2009 memorandum of decision, the court concluded that the plaintiff had not raised genuine issues of material fact "concerning the lack of proximate cause between the alleged accident and the alleged unsafe condition [or] concerning the defendant's lack of actual or constructive notice of the alleged unsafe condition." Accordingly, the court rendered summary judgment in favor of the defendant, and this appeal followed.

Summary judgment is appropriate when "the pleadings, affidavits and any other proof submitted show that

---

[2] In their respective affidavits, Husted, Camire and Paul all averred that "[n]o one has ever complained about any slippery substance or residue being present on the pool steps where this accident is alleged to have occurred before [the plaintiff] claims she fell in June, 2007."

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). "A material fact is a fact that will make a difference in the result of the case. . . . [T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment . . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute." (Citation omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 803, 842 A.2d 1134 (2004).

Once met, the burden shifts to "the party opposing such a motion [to] provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Bednarz* v. *Eye Physicians of Central Connecticut, P.C.*, 287 Conn. 158, 169, 947 A.2d 291 (2008). "A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Lunn* v. *Cummings & Lockwood*, 56 Conn. App. 363, 370, 743 A.2d 653 (2000). Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005).

It is undisputed that the plaintiff was a business invitee of the defendant. The defendant thus owed the plaintiff a duty to keep its premises in a reasonably safe condition. *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002). "Typically, under traditional premises liability doctrine, [f]or [a] plaintiff to recover for the breach of a duty owed to

[her] as [a business] invitee, it [is] incumbent upon [her] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [her injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it." (Internal quotation marks omitted.) *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 418 n.9, 3 A.3d 919 (2010); see also 2 Restatement (Second), Torts § 343, pp. 215–16 (1965). As our Supreme Court observed, "to recover under our current law, the plaintiff [is] required to prove that the defendant had had actual or constructive notice of the *specific defect* that caused the plaintiff's injuries." (Emphasis added.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 164, 914 A.2d 529 (2007).

The plaintiff does not allege that the defendant possessed actual notice of the allegedly unsafe condition at issue. As a result, the question before us is whether a genuine issue of material fact exists as to whether the defendant had constructive notice of the defect of which the plaintiff complains. That question entails an inquiry into "whether the condition had existed for such a length of time that the [defendant's] employees should, in the exercise of due care, have discovered it in time to have remedied it. . . . What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case. The nature of the business and the location of the foreign substance would be factors in this determination . . . . To a considerable degree each case must be decided on its own circumstances. Evidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant."

(Citations omitted; internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 777, 918 A.2d 249 (2007).

In her deposition testimony, the plaintiff averred that she watched her step as she entered the pool via the ladder. She testified that she was able to see clearly where she was stepping and observed no substance or residue on the step at that time. When asked to describe her fall, the plaintiff stated that "I put my foot down, and it happened so fast I just went in." In response to the question of whether her left or right foot had stepped into the pool water before she slipped, the plaintiff stated: "I don't remember, it happened so fast." She further testified that she "couldn't say which step" she had slipped on or whether that step was under water. The following colloquy transpired on that point:

"[The Defendant's Counsel]: . . . So, you don't know if you fell after walking into the water; is that correct?

"[The Plaintiff]: Walking into the water, I wasn't in the water.

"[The Defendant's Counsel]: So you fell—you're—

"[The Plaintiff]: I slipped on a step.

"[The Defendant's Counsel]: So, you slipped on a step that was outside the water, above the water, correct? Is that what you're telling me?

"[The Plaintiff]: I don't know.

"[The Defendant's Counsel]: Okay. . . . I mean, your right foot, was it in the pool water or was it outside the pool when you slipped?

"[The Plaintiff]: When I slipped [it] must have been there, and I don't know if that [step] was covered with

water or not. Whatever step I stepped on, I don't know if it was covered with water, but I slipped."

The plaintiff also recounted how her husband discovered a residue on one of the ladder's steps immediately after her fall. She testified that the step from which he had scraped the residue was under water. She further confirmed that she did not know if the step from which he had scraped the residue was the same step on which she slipped. In addition, the plaintiff stated that she did not know if the residue that her husband discovered was present on the step on which she slipped. The plaintiff also stated that she did not know if she slipped because of a misstep with her right foot.

On appeal, the plaintiff contends that she submitted evidence indicating that the defendant had constructive notice of the alleged defect. Specifically, she relies on her husband's statement in his affidavit that he "felt a slimy, slippery, algae-like build-up" on the steps and on Looney's deposition testimony. In that testimony, Looney was asked about the conditions under which a "slipperiness or sliminess" could appear in the pool. Looney stated that if one stopped applying chemicals, including chlorine to the pool, "within maybe four or five days you would see the pool start to turn a tinge of green. And then you would start to see this precipitate out onto other things. . . . [I]t would take a long time. And it wouldn't happen in one hour, in two hours. It would take days." Looney further stated that he monitored the pool and maintained proper chemical levels on a daily basis. The plaintiff argues that Looney's testimony and her husband's affidavit together establish a genuine issue of material fact regarding whether an unsafe condition had existed for such a length of time that the defendant's employees should, in the exercise of due care, have discovered it in time to have remedied it. We disagree.

It is well established that "[o]n a question of notice, the trier's consideration must be confined to the defendant's knowledge and realization of the specific condition causing the injury, and such knowledge and realization cannot be found to exist from a knowledge of the general or overall conditions obtaining on the premises." *Monahan* v. *Montgomery*, 153 Conn. 386, 390, 216 A.2d 824 (1966); see also *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 418 n.9; *Kirby* v. *Zlotnick*, 160 Conn. 341, 344–45, 278 A.2d 822 (1971); *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 228, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002); *Kurti* v. *Becker*, 54 Conn. App. 335, 343–44, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999) (*Landau, J.*, dissenting); *Fuller* v. *First National Supermarkets, Inc.*, 38 Conn. App. 299, 301, 661 A.2d 110 (1995); *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 60, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). The plaintiff's contention confounds that principle, as the proof submitted is bereft of evidence that she ever came into contact with the residue discovered by her husband. In moving for summary judgment, the defendant submitted the aforementioned deposition testimony of the plaintiff, in which she testified, inter alia, that (1) she encountered no residue on the ladder on June 26, 2007, (2) she did not see any residue on the ladder as she stepped down on June 27, 2007, (3) her husband had felt a residue on an underwater step, (4) she did not know if the step she slipped on was under water, (5) she did not know if the step she slipped on was the one from which the residue was discovered, (6) she did not know if the residue that her husband discovered was present on the step on which she slipped and (7) she did not know if she slipped because of a misstep with her right foot. Put simply, the attestation of the plaintiff's husband that he felt a slippery residue in the area where the plaintiff fell pertains to the general

conditions of the area, which is insufficient to establish constructive notice on the part of the defendant. Likewise, Looney's deposition testimony as to the consequences of terminating chemical treatment in the pool relates to knowledge of conditions naturally productive of a defect, rather than knowledge of the specific defect in question. *Kirby* v. *Zlotnick*, supra, 344.

Furthermore, there is no evidence before us that the allegedly defective condition existed for such a length of time that the defendant's employees should, in the exercise of due care, have discovered it in time to have remedied it. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 777. Although Looney in his deposition stated that a residue could appear days after cessation of chemical treatment to the pool, he also testified that he had maintained proper chemical levels in the pool on a daily basis at all relevant times. In addition, the plaintiff in her deposition testimony acknowledged that she and her husband had traversed the ladder in question on the day before her fall. She testified that they did not observe any residue thereon or encounter any slippery conditions when they entered and exited the pool via the ladder at that time. In light of the foregoing, we concur with the conclusion of the court that no genuine issue of material fact existed as to whether the defendant had constructive notice of the specific condition causing the plaintiff's injuries.

In her reply brief, the plaintiff for the first time claims that this court should modify the law of premises liability in Connecticut with regard to the notice of a defect that a plaintiff must demonstrate. In particular, she asks us to eliminate the specific defect requirement, insisting that knowledge of the general conditions in the area provides sufficient notice to a defendant of the condition of the premises. For two reasons, her invitation is ill-advised. First, "[i]t is well established . . . that [c]laims . . . are unreviewable when raised for the

first time in a reply brief." *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009). One rationale for that maxim is the fact that "[a]rguments first presented in a reply brief impair the opposing party's opportunity to reply in writing." *State* v. *Rosario*, 113 Conn. App. 79, 93, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). Such is the case here.

Second, we are mindful that our Supreme Court recently declined to consider the precise claim advanced by the plaintiff. See *Riccio* v. *Harbour Village Condominium Assn., Inc.*, supra, 281 Conn. 165. In that decision, the court reaffirmed that "to recover under our current law, the plaintiff was required to prove that the defendant had had actual or constructive notice of the specific defect that caused the plaintiff's injuries." Id., 164. It is axiomatic that this court, as an intermediate body, is bound by the decisions of our Supreme Court. See *Fennelly* v. *Norton*, 103 Conn. App. 125, 133 n.5, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007). Accordingly, "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008); see also, e.g., *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("Our Supreme Court is the ultimate arbiter of the law in this state. We, as an intermediate appellate court, cannot reconsider the decisions of our highest court."). Proper regard for this court's role as an intermediate appellate tribunal mandates that we decline the plaintiff's invitation.

The judgment is affirmed.

In this opinion the other judges concurred.